UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MATTHEW A. SCHRADER,

        Plaintiff,

   -v-

ANDREW SAUL,
Commissioner of Social Security,

        Defendant.

18-CV-898-MJR
DECISION AND ORDER

      Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 16).

      Plaintiff Matthew A. Schrader ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying him Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 10) is denied and defendant's motion (Dkt. No. 12) is granted.

## BACKGROUND

      Plaintiff filed applications for DIB and SSI on July 18, 2014 alleging disability since May 31, 2013,[1] due to herniated discs, cervical spine surgery, left hand injury, bilateral shoulder injury, and right ankle fracture. (*See* Tr. 10, 282-91, 322).[2] Plaintiff's disability benefits applications were initially denied on September 29, 2014. (Tr. 10, 150-69).

---

[1] Plaintiff subsequently amended his alleged disability onset date to May 1, 2014. (Tr. 10, 40).
[2] References to "Tr." are to the administrative record in this case.

Plaintiff sought review of the determination, and a hearing was held before Administrative Law Judge ("ALJ") Melissa Lin Jones on December 20, 2016. (Tr. 10, 37-99). ALJ Jones heard testimony from plaintiff, who was represented by counsel, and a vocational expert at that time.[3] (Id.). A supplemental hearing was held on May 9, 2017, at which time the ALJ heard additional testimony from Plaintiff and received testimony of Rachel A. Duchon, an impartial vocational expert. (Tr. 99-149). On June 27, 2017, ALJ Jones issued a decision that plaintiff was not disabled under the Act. (Tr. 7-32). Plaintiff timely sought review of the decision by the Appeals Council. (Tr. 1-6). Plaintiff's request for review of the decision was denied by the Appeals Council on June 13, 2018. (Id.). The ALJ's June 27, 2017 denial of benefits became the Commissioner's final determination, and the instant lawsuit followed.

Born on August 23, 1970, plaintiff was forty-three years old at the time of the alleged disability onset date and forty-six years old at the time of the hearing. (Tr. 30, 45, 168). He has completed a high school education and has previously worked as a heavy equipment operator, roofer helper, lathe operator, general labor supervisor, and forklift operator. (Tr. 29-30, 45-50).

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such

---

[3] At the conclusion of the first hearing, ALJ Jones wholly rejected the testimony of the vocational expert, Gerald Belichick, and determined that a supplemental hearing would be held to obtain testimony from another vocational expert. (Tr. 98).

relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has

4

a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the

fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll,* 705 F.2d at 642.

III.   *The ALJ's Decision*

The ALJ first found that plaintiff met the insured status requirements of the Act through December 31, 2018. (Tr. 12). The ALJ then followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of May 1, 2014. (*Id.*)  At step two, the ALJ found that plaintiff has severe impairments consisting of: (1) degenerative disc disease of the cervical spine; (2) mild rotator cuff and supraspinatus impingement of the right shoulder; (3) history of right ankle fracture; (4) history of left hand extensor tendon repair; (5) chronic pain syndrome; (6) and attention deficit/hyperactivity disorder (ADHD).[4] (Tr. 12-13). At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 13-15). Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

---

[4] The ALJ concluded that plaintiff's complaints related to fibromyalgia and sleep apnea were not medically determinable impairments under the applicable guidelines. (Tr. 13).

> [T]he [plaintiff] has the residual functional capacity to perform
> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)
> except he can occasionally twist and turn his neck and occasionally
> finger or feel with the left hand. He can occasionally repetitively use
> his arms above shoulder level and occasionally operate foot controls.
> The claimant is limited to unskilled, simple routine work.

(Tr. 15).

Proceeding to step four, the ALJ concluded, based on the testimony of VE Duchon,

that plaintiff is not capable of performing his past relevant work because all prior job were

performed at exertional levels greater than those described in his residual functional

capacity. (Tr. 29-30). Under step five, the ALJ found that there are other jobs that exist in

significant numbers in the national economy which plaintiff can perform. (Tr. 30-31).

Accordingly, the ALJ found that plaintiff has not been under a disability within the meaning

of the Act from May 1, 2014 through the date of her decision. (*Id.*)

IV.    *Plaintiff's Challenges*

Plaintiff argues that remand is required because the Commissioner did not sustain

his step five burden of demonstrating that jobs in "significant numbers" existed in the

national economy. (See Dkt. No. 10-1 (Plaintiff's Memo of Law)). In construing the term

"significant numbers," plaintiff objects that the ALJ did not perform an adequate analysis

or solicit from the vocational expert a breakdown of available job numbers by region and

category. (*Id.*). Plaintiff further argues that remand is necessary because the ALJ had no

medical opinion related to plaintiff's mental health functioning in making the RFC

determination. (*Id.*). Instead, plaintiff asserts that the ALJ relied upon Global Assessment

of Functioning ("GAF") scores which did not amount to substantial evidence. (*Id.*)

After reviewing the ALJ's decision, the hearing transcript and the relevant evidence

in the record, the Court concludes that the ALJ did not err in finding that work fitting

plaintiff's residual functional capacity exists in significant numbers in the national economy. The Court also holds that substantial evidence supported the ALJ's findings related to plaintiff's mental health functioning and RFC.

### Vocational Expert Testimony

At the May 9, 2017 hearing, ALJ Jones presented VE Duchon with a hypothetical question matching the exertional level and functional limitations determined to be plaintiff's residual functional capacity. (Tr. 137). In response, the VE testified that an individual with such limitations could perform work as a call-out operator and surveillance system monitor. (*Id.*). After finding that plaintiff was unable to return to any of his past relevant work, the ALJ concluded that plaintiff could adjust to other work that exists in significant numbers in the national economy. (Tr. 29-31). This determination was based on the VE's testimony that there were 5,182 call-out operator jobs and 6,375 surveillance system monitor jobs existing in the national economy.[5] (Tr. 31).

After a determination that a claimant cannot perform his past relevant work, the burden shifts to the Commissioner to show that there is other gainful work in the national economy, in significant numbers, which the claimant could perform based on his RFC, age, education, and past relevant work. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "Work exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country"

---

[5] The transcript of hearing testimony suggests that the VE stated there were actually about 177,000 jobs in the national economy that the plaintiff could perform within the provided occupational groupings. (Tr. 137). However, although the ALJ tried to elicit testimony distinguishing between figures taken from DOT occupational groupings versus the specific DOT-identified job codes, the Court is unclear on the exact meaning and application of the VE's testimony on this point. (Tr. 137-145). Nonetheless, the Court relies only on the 5,812 call-out operator jobs and 6,375 system surveillance monitor jobs unquestionably cited by the VE as jobs able to be performed by someone with plaintiff's exact limitations. (Tr. 127, 143). Additionally, the Court notes that the ALJ did not rely on the larger occupational grouping number in her decision either. (Tr. 31).

and the claimant is able to meet [the work requirements] with [his] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1556(a)-(b). Work may be considered to exist in the national economy regardless of whether it exists in the immediate area of the claimant's residence, whether there is a specific job vacancy, or whether the claimant would be hired upon applying to the position. 20 C.F.R. § 404.1566(a)(1)-(3). The Commissioner need only show one type of job existing in the national economy that can be performed by claimant. *See Bavaro v. Astrue*, 413 Fed. Appx. 382, 384 (2d Cir. 2011). An ALJ may credit and rely upon the testimony of a vocational expert in finding that such jobs exist. *Id.*, 413 Fed. Appx. at 384 (citing 20 C.F.R. § 404.1566(e)); *see also Calabrese v. Astrue*, 358 Fed. Appx. 274, 276 (2d Cir. 2009); *Dumas*, 712 F.2d at 1553-54.

Neither the Social Security Act, nor the Commissioner's Regulations or Rulings provide a definition for a "significant" number of jobs. *Koutrakos v. Colvin*, 2015 U.S. Dist. LEXIS 31524, *69 (D. Conn. 2015). Courts have not established a bright line test as to the threshold number of jobs that is considered "significant" for purposes of the Act. *Sanchez v. Berryhill*, 336 F.Supp. 3d 174, 177 (W.D.N.Y. 2018). Courts have held that a "significant number" of jobs is "fairly minimal." *Hamilton v. Comm'r of Soc. Sec.*, 105 F.Supp. 3d 223, 229 (N.D.N.Y. 2015).

Here, plaintiff contends that the 11,557 jobs in the national economy cited by the VE is too close of a call to determine that such work exists in "significant numbers" without more thorough analysis of the issue. Plaintiff relies on *Peach v. Berryhill* for its holding and collection of cases where specific job titles cited with less than 9,000 jobs available in the national economy were either questioned by the court or held not to be a

"significant" number. *See* 2018 U.S. Dist. LEXIS 148339, *9-11 (W.D.N.Y. 2018). However, plaintiff is unable to cite a case where a number higher than the 11,557 figure at issue here was determined not to be a significant amount. In fact, a Court in this District recently determined that 9,046 jobs existing in the national economy is a "significant" number. *See Sanchez*, 336 F. Supp. 3d at 177-178 ("This number of jobs is consistent with those found to be 'significant' under the Act by other courts examining the issue, and I find no reason to disturb that consensus."). Although the difference of a few thousands jobs could change this outcome, there is clear precedent showing that the number provided by the VE was significant enough to support the ALJ's step five determination that such work existed in "significant numbers."

Plaintiff further argues that the ALJ erred by not asking for a breakdown of the job numbers by region. The proper geographic baseline for the measure of jobs in significant numbers is neither the state nor the nation, but "the region where [the claimant lives] or in several regions of the country." *Durante v. Colvin*, 2014 U.S. Dist. LEXIS 136781, *13 (D. Conn. Sept. 29, 2014) (quoting 42 U.S.C. § 423(d)(2)). Yet, the *Durante* Court went on to explain that a large number of jobs existing in the national economy is "*prima facie* (i.e. absent some plausible explanation of why the jobs would be concentrated in one region, which is not the case here) sufficient to establish that a substantial number of jobs exist in multiple regions, as the statute requires." *Id.*; *see also Brun v. Barnhart*, 2004 U.S. Dist. LEXIS 3206, *6 (D. Me. Mar. 3, 2004) ("There is nothing in the nature of the job at issue, surveillance monitor, that suggests that these jobs exist in only a few locations."), *aff'd*, 126 F. App'x 495 (1st Cir. 2005). Indeed, the job title referenced in *Brun* ("surveillance monitor...DOT code 379.367-010") is exactly the same job code cited by

VE Duchon in this case. As there was no indication that the jobs referred to by the VE were "isolated jobs existing only in limited numbers in relatively few locations outside of the region where plaintiff lives," the ALJ was permitted to rely on the national economic figures as presented. *See Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999). Accordingly, this Court finds no error in the step-five determination of ALJ Jones.

<u>*Mental Functioning Determination*</u>

Plaintiff also argues that the ALJ erred by not having medical opinion evidence, and instead relying on GAF scores, to support his RFC determination about the extent of plaintiff's mental impairments. Plaintiff asserts that GAF scores are unreliable and do not amount to substantial evidence.

In evaluating a disability claim, the ALJ is directed to consider a wide variety of evidence, including opinion evidence from medical sources that specifically discusses a claimant's ability to perform the physical and mental demands of various work activities. *See* 20 C.F.R. § 404.1513(a)(2). The ALJ should request medical source statements assessing what a patient can still do despite his or her impairments, but the failure to obtain such opinion statements does not make an RFC assessment defective. *See Tankisi v. Comm'r of Soc. Sec.*, 521 Fed. Appx. 29, 33-34 (2d Cir. 2013); *accord Roscoe v. Berryhill*, 2018 U.S. Dist. LEXIS 161936 (W.D.N.Y. Sept. 21, 2018). "[R]emand is not always required when an ALJ fails in his duty to request opinions, particularly where [...] the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi*, 521 Fed. Appx. at 34 (citation omitted). An RFC assessment need not be supported by a medical source statement or formal medical opinion as long as "the record is clear and contains some

useful assessment of the claimant's limitations from a medical source" from which the ALJ can assess the claimant's RFC. *Muhammad v. Colvin*, 2017 U.S. Dist. LEXIS 177763, *10 (W.D.N.Y. Oct. 26, 2017) (internal quotation marks and citations omitted); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. Appx. 5, 8 (2d Cir. 2017) (summary order).

Plaintiff is correct in his assertion that GAF scores do not directly correlate to the severity of mental impairments for social security disability adjudications. *See* 65 Fed. Reg. 50746-01, 50764-65; *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (quoting U.S. Soc. Sec. Admin., Office of Disability Programs, AM-13066, Global Assessment of Functioning (GAF) Evidence in Disability Adjudication (Oct. 14, 2014)) ("Unless [a] clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis."). Here, the ALJ afforded "great weight" to the GAF scores given to plaintiff by his mental health provider. (Tr. 29). Notably, the ALJ explained that she gave such weight to these scores because they were "consistent with the evidence of the record, as a whole." (*Id.*). But, the ALJ did not rely only on the GAF scores reflecting plaintiff's mental state at a particular time. Her decision shows that she looked to the longitudinal assessments of functioning recorded by plaintiff's treating psychologist, Robert Gibbon, M.D., and counselor, Douglas Scotchmer, LMHC. (Tr. 26-29). Those treatment records indicate that plaintiff was suffering from symptoms related to ADHD. (Tr. 26). They also reflect that plaintiff's mental impairments were mild to moderate during the period of December 2014 through February 2017. (*Id.*).

12

A record contains sufficient evidence for RFC determination when the treatment notes and findings of a physician include not only descriptions of claimant's symptoms, but also provide contemporaneous medical assessments of claimant's mood, energy, affect, and other characteristics relevant to his ability to perform sustained gainful activity. *See Monroe*, 676 Fed. Appx. at 8-9. The ALJ's assessment of plaintiff's mental functioning was reasonable and common-sense based on a complete record before her. She had three years of detailed mental health treatment notes which contained contemporaneous assessments of plaintiff's mental functioning. (Tr. 741-855, 930-952). In addition to the GAF scores, the ALJ considered the treatment notes which related to plaintiff's social activities and hobbies relevant to his functional capacity. *See Monroe*, 676 Fed. Appx. at 8. These observations included plaintiff's ability to care for his young daughter and ill mother, his use of the internet, his enjoyment of scrap metal collecting and metal working, his ability to perform home and car repairs, and his plan to go "hunting for mushrooms" in the woods that spring. (Tr. 29). They also describe that plaintiff had trouble dealing with his physical pain, which made him late for things, miss doctor's appointments, and feel frustrated. (Tr. 28). The records showed that plaintiff had better focus, mood, and concentration after receiving treatment with Adderall. (*Id.*). Based on these detailed mental health treatment records, the ALJ did not need a medical opinion regarding plaintiff's mental functioning. She was justified to formulate the RFC based on the observations and evaluations contained in plaintiff's treatment record and complete medical history. Thus, substantial evidence supports the RFC determination.

## CONCLUSION

For the foregoing reasons, plaintiff Matthew A. Schrader's motion for judgment on the pleadings (Dkt. No. 10) is denied, defendant Commissioner of Social Security's motion for judgment on the pleadings (Dkt. No. 12) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      June 2, 2020
            Buffalo, New York


MICHAEL J. ROEMER
United States Magistrate Judge